In the Matter of the Accounting of GUARANTY TRUST COMPANY OF NEW YORK, as Trustee under the Will of JAMES B. KENNEDY, Deceased.

DRUMMOND C. N. DUNBAR et al., Appellants; GUARANTY TRUST COMPANY OF NEW YORK, as Trustee, et al., Respondents, Impleaded with Another.

Argued October 3, 1938; decided December 6, 1938.

*Selden Bacon* for Drummond C. N. Dunbar, appellant. The direction to the trustee to pay and divide upon the daughter's death to and among her child or children

and issue of deceased children of hers fixes, at the date of her death, the membership of the class among whom she was authorized to direct distribution. She had no power to create future estates in favor of persons not actual members of the designated class at the moment of her own death. (*Dunkel* v. *Homindustries, Inc.*, 275 N. Y. 327; *Matter of Evans*, 165 Misc. Rep. 752; *Wallace* v. *Diehl*, 202 N. Y. 156; *Matter of Baer*, 147 N. Y. 348; *Schmidt* v. *Jewett*, 127 App. Div. 376; 195 N. Y. 486; *Matter of Westchester Trust Co.*, 173 App. Div. 403; 219 N. Y. 638; *Matter of Crane*, 164 N. Y. 71; *Matter of Farmers L. & T. Co.*, 189 N. Y. 202; *Lyons* v. *Ostrander*, 167 N. Y. 135; *Matter of Smith*, 131 N. Y. 239; *Delafield* v. *Shipman*, 103 N. Y. 463; *Fowler* v. *Ingersoll*, 127 N. Y. 472; 2 Davids, New York Law of Wills, p. 1219.) The mere appointment of a life estate in one-half of the fund to a trustee for each child, with no valid appointment over of the remainder, was not an effectual exercise of the limited special power conferred on his daughter by the decedent. (2 Sugden on Powers, pp. 69–71; *Varrell* v. *Wendell*, 20 N. H. 431; *Matter of Remsen*, 126 Misc. Rep. 25; 215 App. Div. 832; *Tweddell* v. *N. Y. Life Ins. Co.*, 49 App. Div. 258; *Hooper* v. *Hooper*, 203 Mass. 50; *Myers* v. *Safe Deposit Co.*, 73 Md. 412; *Wickersham* v. *Savage*, 58 Penn. St. 365; *Matter of Pepper*, 120 Penn. St. 235; *Matter of Smith*, 4 Weekly Notes of Cases [Pa.], 265; *Matter of Lansing*, 182 N. Y. 238; *Matter of Haggerty*, 128 App. Div. 479; 194 N. Y. 550; *Matter of Hoffman*, 161 App. Div. 836; *Matter of Slosson*, 216 N. Y. 79; *Matter of Ripley*, 122 App. Div. 419; 192 N. Y. 536; *Matter of Duryea*, 277 N. Y. 310; *Helvering* v. *Grinnell*, 294 U. S. 153.) The will of decedent contains words of positive restriction forbidding such partial appointment of life estates, leaving the remainder undisposed of. (*Matter of Buechner*, 226 N. Y. 440; *Lewis* v. *Brennan*, 141 La. 585; *State* v. *Cherry Point Fish Co.*, 72 Wash. 420.) The

partial appointment of the independent life estates is subversive of the provisions and general plan of the will. (*Matter of Remsen*, 126 Misc. Rep. 25; 215 App. Div. 832; *Stuyvesant* v. *Neil*, 67 How. Pr. 17; *Tweddell* v. *N. Y. Life Ins. Co.*, 49 App. Div. 258; *Varrell* v. *Wendell*, 20 N. H. 431; *Hooper* v. *Hooper*, 203 Mass. 50; *Myers* v. *Safe Deposit Co.*, 73 Md. 412; *Wickersham* v. *Savage*, 58 Penn. St. 365; *Pepper's Appeal*, 120 Penn. St. 235.) The appointment of the life estates falls with the rest of the invalid appointment. (*Tweddell* v. *N. Y. Life Ins. Co.*, 49 App. Div. 258; *Stuyvesant* v. *Neil*, 67 How. Pr. 17; *Varrell* v. *Wendell*, 20 N. H. 431.)

*Cornelius J. Smyth*, special guardian for Marjorie F. A. Dunbar, appellant. The appointment of the principal to unborn issue of living children was unauthorized and outside the class specified in the power. (*Matter of Crane*, 164 N. Y. 71; *Delaney* v. *McCormack*, 88 N. Y. 174; *Robinson* v. *Martin*, 200 N. Y. 159; *Dickerson* v. *Sheehy*, 209 N. Y. 592; *Fulton Trust Co.* v. *Phillips*, 218 N. Y. 573; *Matter of Bostwick*, 236 N. Y. 242; *N. Y. Life Ins. & Trust Co.* v. *Winthrop*, 237 N. Y. 93; *Matter of Baer*, 147 N. Y. 348; *Wallace* v. *Diehl*, 202 N. Y. 156.) The appointment of life estates to appellants was not an effectual exercise of the power of appointment. (*Stuyvesant* v. *Neil*, 67 How. Pr. 16; *Matter of Guiltinan*, 122 Misc. Rep. 604; *Matter of Remsen*, 126 Misc. Rep. 25; 215 App. Div. 832; *Matter of Trowbridge*, 124 Misc. Rep. 317.)

*John J. Barrett* and *Otis T. Bradley* for Guaranty Trust Company of New York, as trustee, respondent. The daughter of decedent had the power to appoint the fee to her children and the power conferred on her to appoint a fee included the power to appoint a lesser estate, there being no positive restriction against this in the decedent's will. (*McLean* v. *McLean*, 174 App. Div. 152; 223 N. Y. 695; *Cheever* v. *Cheever*, 172 App. Div. 353; *Matter of*

*Colt,* 154 Misc. Rep. 843; *Lehman* v. *Spicer,* 108 Misc. Rep. 721; 188 App. Div. 931; *Matter of French,* 119 Misc. Rep. 445; *Matter of Tenney,* 104 App. Div. 290; *Matter of Lyons,* 271 N. Y. 204; *Matter of Haggerty,* 128 App. Div. 479; 194 N. Y. 550; *Matter of Haight,* 152 App. Div. 228.)

*George Frankenthaler,* special guardian for unborn children of Drummond C. N. Dunbar and those of Marjorie F. A. Dunbar, respondent. The creation of life estates by the daughter of decedent for the benefit of her children instead of estates in fee, was a legal and valid exercise of the power of appointment. (*Cheever* v. *Cheever,* 172 App. Div. 353; 4 Kent's Comm., p. 345; *McLean* v. *McLean,* 174 App. Div. 152; *Butler* v. *Huestis,* 68 Ill. 594; *Matter of French,* 119 Misc. Rep. 445; *Matter of Dodge,* 129 Misc. Rep. 390; *Hillen* v. *Iselin,* 144 N. Y. 365; *Matter of Hughes,* [1921] 2 Ch. 208.)

Rippey, J.   The death of James B. Kennedy occurred in England on February 24, 1931.   He was a citizen of the United States and a domiciliary resident of the State of New York.   On July 19, 1928, he made two wills, one of which related to his estate in England while the other was applicable to his estate in the United States. In his will disposing of his estate in this country he directed that the testamentary dispositions therein contained " be construed and regulated by the laws of the State of New York."   At the time of his death, he left a son, George H. Kennedy, and a daughter, Lady Sophia Kathleen Dunbar, entitled to inherit his estate in the event he died intestate.   His daughter, a resident of England, died on June 9, 1936, leaving her surviving a husband from whom she was separated, and two children of whom she had the sole custody and control, Drummond C. N. Dunbar, born in 1917, and Marjorie Frederica Ann Dunbar, born in 1919.   She left no descendants of deceased children.   In fact, the son and daughter

mentioned were the only children she ever had. Both children were living, unmarried and without descendants, at the time of her death, and are still living.

We are concerned, on this appeal, with the construction of a single provision of the Kennedy will applicable to property in this country, found in clause 2 of paragraph sixth. In that will he named the Guaranty Trust Company of New York as his executor and the sole trustee of the trust for his daughter. To his son he gave one-half of his residuary estate outright. The other half he gave, devised and bequeathed to his trustee in trust " to invest and re-invest the same, to collect the rents, issues, and profits thereof, and to apply the net income therefrom to the use " of his daughter " for and during the term of her natural life, without power of anticipation. Upon her death, to pay and divide the principal of said share to and among such of her children and issue of deceased children as she shall by her Last Will and Testament appoint; and if my said daughter shall fail effectually to exercise such power of appointment the principal of said share shall be transferred to and divided among her child or children, if any, in equal shares *per stirpes*; if none, then to my said Son, George Holden Kennedy, or if he be not then living to his children, if any, in equal shares *per stirpes*, but if none, then to such person or persons as would be entitled to take from me as my next-of-kin or heirs-at-law under the laws of the State of New York in case of intestacy."

Lady Dunbar, by will, attempted to exercise the power of appointment by creating separate trusts for her children in trustees whom she named and by directing her trustees to divide the half of her father's American estate of which she was given the life use into two equal parts, one to be known as her son's part and the other to be known as her daughter's part. The son's part she directed her trustees to dispose of as follows: " The said Trustees shall pay to my son the income of the son's part during

his life and after his death shall pay and divide the principal of my son's part to and among the children of my son then living in such shares if more than one and with such provisions in regard to maintenance education and/or support during minority as my said son may by any deed or deeds revocable or irrevokable and executed in his lifetime or by his last Will and Testament or any Codicil thereto appoint and in default of and subject to such appointment or in so far as such appointment shall not extend the said Trustees shall pay and divide my son's part to and among the child or children then living of my son and if more than one in equal shares absolutely. In the event that my son shall die without leaving a child or children him surviving then I direct that my son's part shall be transferred and paid over outright to my daughter if she is then living and if she is not then living said part shall be paid and divided to and among the child or children of my daughter then living and if more than one in equal shares absolutely." Then follows a parallel provision for the disposal of her daughter's part.

The learned Surrogate held that Lady Dunbar had, by the terms of her will, validly and effectually exercised the power conferred upon her, relying first upon what is asserted to be the rule that " The power conferred on the donee to appoint a fee included the power to appoint a lesser estate, there being no positive restriction in the donor's will," citing various cases to which we below refer, and that, under the decision of this court in *Hillen* v. *Iselin* (144 N. Y. 365), the gift of the remainder to the great-grandchildren of the donor was to those of a class to whom the donee was given the power to distribute the corpus of the trust. In this, the Appellate Division concurred.

The assertion that, in the absence of positive and express words of prohibition to the contrary by the donor, the power conferred upon a donee to appoint a

fee includes the power to appoint a lesser estate is, at most, only a doctrine of equity limited to particular cases where the circumstances require its application. The doctrine is not embraced in any statute. It is not a rule of universal application. It has never been laid down as a rule of construction by our court. None of the cases cited by the Surrogate are in point. In *Matter of Colt* (154 Misc. Rep. 843), cited by the Surrogate, the donee, a daughter of the donor, was expressly given a broad power to dispose of the corpus of the trust to the donee's children or to the lawful issue of her children in such " shares, proportions and estates " as she might " direct, limit and appoint," and it was held that she acted within the power when she gave life uses to her two children. That was the only point decided. The question of the validity of the final disposition of the corpus was not involved. Its attempted disposition by the grandchildren of the donor was not a fact in issue. In *Matter of French* (119 Misc. Rep. 445) the facts were entirely different from those in the instant case and the donee exercised the power of appointment to the specific class named by the donor. In *Cheever* v. *Cheever* (172 App. Div. 353) again it was not necessary to be invoked to sustain the decision as the power was general and unlimited. In *McLean* v. *McLean* (174 App. Div. 152; affd., 223 N. Y. 695) the property in question passed under the residuary clause of the donor's will to the donee and she had a right to bequeath the property to whomsoever she wished without reference to the exercise of the power clause in her husband's will. Reliance upon any such general statement of a rule, even if applicable in a proper case, is unwarranted without consideration of its effect upon the intent and purpose of the testator, the nature of the power whether general, limited or specific and the special circumstances of the case under consideration (*Collister* v. *Fassitt*, 163 N. Y. 281, 286), as also appears from cases, cited by appellant, where

the power to give a fee is held not to embrace the giving of a lesser estate (See Sugden on Powers [3d Am. ed.], vol. 1, p. 535, vol. 2, pp. 69–71; 4 Kent's Commentaries [12th ed.], p. 345; *Varrell* v. *Wendell*, 20 N. H. 431, 438; *Matter of Remsen*, 126 Misc. Rep. 25; affd., 215 App. Div. 832; *Hooper* v. *Hooper*, 203 Mass. 50; *Myers* v. *Safe Deposit & Trust Co.*, 73 Md. 413; *Wickersham* v. *Savage*, 58 Penn. St. 365; *Matter of Pepper*, 120 Penn. St. 235, 255). We neither approve nor consider the validity of the alleged rule, for we find that in no aspect does it have any force under the facts in the case at bar. Here the power was limited and specific and was not effectually exercised by the donee.

We must look exclusively to the will of Mr. Kennedy to determine the terms, scope and limitations upon the power. It must be exercised strictly according to its terms (3 Bogert on the Law of Trusts & Trustees, p. 1692). The donee was unauthorized to go outside of or exceed the power given; she was required to exercise it, if she acted at all with reference to it, within its specific terms. In construing the power, we are required not only to consider its express terms but also, if necessary, the general plan, purpose and intent of the testator as found within the express provisions and within the will as a whole. " The intention of the donor of the power is the great principle that governs in the construction of powers " (4 Kent's Commentaries, p. 345). Within limitations with which we are not here concerned, a testator may make such disposition as he wishes of his property without interference by the courts or by those who may believe that some other disposition would be more desirable or practicable. The plan, purpose and intent of Mr. Kennedy was to dispose of his property absolutely and finally as to his son's share to the son upon his own (the testator's) death and as to his daughter's share upon the daughter's death to her children then living and to the descendants of any deceased children of the daughter then living, *per stirpes*. By express

terms, he so provides; if there were any ambiguity in the words and expressions used, it would necessarily be resolved in favor of such a construction by a perusal of the will as a whole. Mr. Kennedy authorized and directed *his* trustee to "pay and divide" the principal of the trust for the daughter upon the death of Lady Dunbar to and among "such of her children and issue of deceased children as she shall by her last Will and Testament appoint." The class to whom his trustee was directed to pay and divide the corpus of the trust was definitely, completely and finally ascertained and fell in according to the express terms of his will *upon the death of Lady Dunbar*. There were then no descendants of any deceased child of hers. She left her surviving two children and two children only and to them alone had she any power to dispose of the corpus of the trust. The power was to *apportion* the property itself to her children and to the issue of deceased children and not a limited interest therein. She had no power to extend the ultimate vesting of the estate to some time in the future or, specifically, to the death of her children. She had a specific and limited power to allocate the corpus of the trust in such shares as she saw fit to a specific class described by the donor, the members of which were ascertained at her death (*Delafield* v. *Shipman*, 103 N. Y. 463; *Wallace* v. *Diehl*, 202 N. Y. 156). The donor fixed the class; she had no power to enlarge or extend it; she exceeded her power when she attempted to appoint the distribution of the corpus of the trust among the issue of her children (2 Davids on New York Law of Wills, p. 1219; *Stuyvesant* v. *Neil*, 67 How. Pr. 16).

Respondents rest heavily, as did the Surrogate, upon the decision in *Hillen* v. *Iselin* (144 N. Y. 365), where the facts are in some aspects similar to those in the case at bar. In other and controlling respects they are entirely dissimilar. In that case, the clause under construction in O'Donnell's will gave the power of appointment to

his daughter Emily, to her child or children and to " his, her or their descendant or descendants, and in such proportions and for such estate and estates therein, either in fee or for a less estate, and with such limitations and conditions as my said daughter Emily may  *  *  * limit and appoint to take the same," and continued the trust, after the death of Emily, in the same trustees for the benefit of those whom Emily might appoint to take the same and, in the event Emily should fail to exercise the power, for the benefit of the same class to whom the appointment to Emily was limited if she should leave a child or children or descendants of a deceased child or children, but if she should die leaving none such, then to other blood relatives of the testator. The power was not limited and special as in the case at bar.

It follows that the specific direction of Mr. Kennedy to his trustee to pay and divide the corpus of the trust upon the death of Lady Dunbar required the immediate vesting thereof upon her death in her son and daughter in the share or shares which she might apportion. The trusts which she attempted to create for the respective lives of her children with contingent remainders were void. Neither was the attempted creation of life estates in her two living children in accordance with the clear intent, purpose and express provisions of Mr. Kennedy's will and they were ineffective. Lady Dunbar, therefore, failed to exercise effectually the power which was given to her by her father to allocate the corpus among her living children at her death and the corpus passes under the provision of Mr. Kennedy's will, where he says: " If my said daughter shall fail effectually to exercise such power of appointment the principal of said share shall be transferred to and divided among her child or children, if any, in equal shares *per stirpes*." The power to be " effectually " exercised must have been in the manner directed by Mr. Kennedy " so as to produce or secure the end desired," and to make effective his purpose and intent as shown by his will.

.The order of the Appellate Division and the decree of the Surrogate's Court in so far as it affects the construction of the will should be reversed and the matter remitted to the Surrogate's Court to enter a decree in accordance with this opinion; in other respects the order appealed from should be affirmed, with costs in all courts to all parties appearing and filing separate briefs payable out of the corpus of the trust.

CRANE, Ch. J., LEHMAN, O'BRIEN and LOUGHRAN, JJ., concur; HUBBS and FINCH, JJ., dissent.

Ordered accordingly.