# United States Trust Co. v. Winchester et al.

March 17, 1939.

James Garnett, Judge.

DAVIS W. EDWARDS for appellant.

THOMAS J. WOOD and TRABUE, DOOLAN, HELM & HELM for part of appellees.

H. M. DENTON for other appellees.

OPINION OF THE COURT BY CHIEF JUSTICE THOMAS—Reversing on appeal and affirming on cross-appeal.

This is a declaratory judgment action filed in the Jefferson circuit court by the appellant, United States Trust Company, executor and trustee under the separate wills of William C. Winchester and his wife, Susie Dorsey Winchester. The testator and testatrix, each of whom executed the two separate wills, will hereinafter be referred to as "the husband" and "the wife." The defendants in the action were and are all of the devisees under the two wills and whose rights are affected by the correct interpretation to be put upon them. The only two questions submitted for determination are: (1) Whether the husband intended to and did exercise the power with reference to the trust fund created by the will of his wife which she as donor conferred upon him by the third clause of her will; and (2) whether the husband had the right to dispose of by will the proceeds of a life policy on his own life in which his wife was the named beneficiary, but which he had the right under the terms of the policy to change at his pleasure. The learned trial judge to whom the questions were submitted—upon undisputed facts—determined both questions (1) and (2) in the affirmative and in his judgment declared the rights of the parties accordingly. All parties objected to the judgment and prayed and were granted appeals to this court. The trustee prosecuted the appeal and the defendants and appellees prayed and were granted here cross-appeals.

In determining the questions we do not consider it incumbent upon us, nor will we embark in a dissertation or discussion of the whole law relating to "Powers," as

developed under the common law, but will confine ourselves strictly to the applicable law as it existed in this jurisdiction at this time, and at the time of the transactions herein involved. Much of the abstruse learning and fine hair-splitting technicalities displayed by the common law with reference to the subject in hand were eliminated by our legislature through the enactment of Section 4845 of Baldwin's 1936 Revision of Carroll's Kentucky Statutes, which became a law long before any of the happenings here involved. It says: "A devise or bequest shall extend to any real or personal estate over which the testator has a discretionary power of appointment, and to which it would apply if the estate was his own property; and shall operate as an execution of such power, unless a contrary intention shall appear by the will. (G. S. c. 113, section 22.)"

The parties (both husband and wife) executed their respective wills on the same day, which was March 5, 1932. The wife's death occurred first, and which was on March 2, 1936, the husband surviving her until October 27, of the same year (1936), when he died. Both wills were duly probated following the death of the one making them. By the first two clauses of the wife's will she provided for the payment of her debts and funeral expenses and devised her corporeal personal effects absolutely to her husband. By the third clause she devised all the rest of her property "of every character" to the plaintiff and appellant, herein, United States Trust Company "of Louisville, Kentucky," conferring upon it absolute power of sale, exchange, investment, re-investment, &c., of both real and personal property. She then directed that the net income should be payable to her husband, William C. Winchester, "during his life." Immediately following that direction her will says: "He shall have the right to dispose of the principal estate by last will and testament, but if he should fail to dispose of the same by will, then my trustee shall dispose of it as follows:" Then follows the contingent or alternative disposition of the property embraced in the residuary clause of her will in case her husband failed to exercise the power to dispose of it by his will which she had given him in her will. In that alternative disposition as so made by her, she devised, with certain qualifications and conditions, one-half of the property to the son of the marriage, the appellee, William Herndon Winchester, and one-fourth each

(making up the other one-half) to the surviving children of a deceased daughter, who were and are the appellees and defendants below, Sue H. Schoonover and John W. Schoonover. By the eighth clause of the wife's will—following the completion of the alternative disposition she made therein—it is said: "This will shall not apply to any property which may be willed to me or for my benefit by my husband, William C. Winchester, for life only with power to will the same."

The will of the husband was in many respects a duplicate of that of the wife, except that the conditional or alternative disposition made by him in his will ignored altogether the son of the couple, William Herndon Winchester, and gave—with certain attached qualifications and conditions—the property embraced in the residuary clause of his will to his two grandchildren, Sue Schoonover and John Schoonover; but in a codicil attached to his will before the death of his wife, he said: "I will to my son, William Herndon Winchester, all the household and kitchen furniture and other personal effects at and about the place where I have been staying in Louisville, and at my farm in Jefferson County, Kentucky, except the jewelry which belonged to my wife and that jewelry I will to Sue Herndon Schoonover." In another codicil executed by him on April 11, 1936, he said: "It is my intention that the life insurance on my life, to whom ever payable, shall be a part of my estate willed in my said will in trust for the benefit of my two grandchildren, John Schoonover and Sue Herndon Schoonover, and after the trust ends as provided in my will," and it is the operating effect of that codicil that forms the basis of the controverted question (2) supra. The husband in the fifth clause of his will gave the residuary portion of his estate, which he referred to as "*My estate* of every character" (our emphasis), to the same trustee and with the same powers as did the wife in her will, and directed that the net income therefrom should be paid to the wife during her life, but adding that: "She shall have the right to dispose of the principal estate, or any part thereof, by last will and testament, but if she should fail to dispose of the same by will, then my trustee shall dispose of it as follows." He then proceeded to dispose of the property to his two grandchildren, as hereinbefore pointed out, leaving out the son altogether, and which dispositions by the husband form the basis for the controversy concerning the

two questions submitted for determination exclusively between the son, William H. Winchester, and his nephew and niece, Sue and John Schoonover.

The correct determination of question (1) is to be governed exclusively by the proper interpretation and application of Section 4845 of our Statutes, supra, as construed by our opinions following its enactment—hence, our statement, supra, that we would not enter into a discussion of the intricacies of the common law relating to the subject. In the case of Greenway v. White, 196 Ky. 745, 246 S. W. 137, 32 A. L. R. 1385, we, in the light of prior opinions, therein referred to, construed the statutory section referred to, and that it permitted the execution of a power possessed by the testator (as donee) by his will when there was nothing in the creation of the power to indicate the mode and manner by which it must be executed by the donee. But we furthermore held that when the creator or donor of the power specifically designated the mode and manner of its execution it could not be executed by the donee in any other manner. We also construed the statute as conferring the right on the donee of the power to execute it in his will through and by its residuary clause without any express mention of his intention to do so, or by referring to the power or to the property to which it related. The wills involved in that case were so worded that we upheld the right of the wife (who survived her husband) to appoint the property—held by her under the power from her husband—in the residuary clause of her will, and that there was nothing in it from which a contrary intention to not execute the power appeared, but on the contrary an expressed intention to do so. Of course—in that opinion, as well as others preceding it and cited therein, and likewise others following it—we recognized the proposition that the chief factor to be considered by the court in determining the question was the language of the two documents involved, i. e., the one creating the power by the donor and the one that is claimed the donee exercised. Following the same course we will now turn to the two wills involved, for the purpose of ascertaining whether or not the husband in this case attempted to and did execute the power in the residuary clause in his will, given to him by the wife in her will?

From what we have said it is manifest that the correct interpretation depends altogether upon the fact as

to whether or not there is anything to be gleaned from the four corners of the husband's will indicating an intention on his part to *not* exercise the power given to him by his wife in her will. If such an intention can be gleaned, then under the statute, supra, his will did not have the effect of exercising that power; otherwise it did have that effect. Within the four corners of the husband's will we are met at the threshold with its second clause saying: "I have in my safety deposit box an envelope containing securities marked with the name of my wife, Susie Dorsey Winchester. This is the private property of my wife and I direct it to be delivered to her at my death." Further along—and in making the alternative disposition of his property upon the failure of the wife to exercise the power he had given her to dispose of it by her will—he refers to such residue as being "My estate" and which was done with the undoubted knowledge that he had by the second clause of his will excluded the trust property here involved from any disposition that might follow in his will, and he then proceeded to dispose of only the property that belonged to him—by referring to it as "my property"—and not to any that might belong to his wife, since by the second clause of his will he had positively excluded it from any dispositions made by him thereafter in his will.

An ancient, undeparted from, and positively settled rule with reference to the interpretation of wills, is that they speak from the death of the testator. That rule is so firmly settled in this and all other jurisdictions as not to require the listing of cases or texts in support of it. So that, immediately upon the death of the husband, his will commenced to speak and it said, in effect, in its second clause that: "My wife's property which I hold and have on deposit in my safety box, and which is encased in an envelope bearing the name of my wife, is not my property, but belongs to her and I want it delivered to her." With that specific property eliminated from the coverage of his will he then proceeds to dispose of *his* property which he designates (as we have seen) as "My estate." It will be observed that neither the statute, supra, nor the opinion in the Greenway or any other case requires an *express* renunciation of intention to exercise the power before such non-exercise will be decreed. The only requisite imposed by the statute for the accomplishment of such renunciation is that an intention *not* to do so "shall appear by the will." We are con-

fident that the brief analysis we have given to the husband's will in this case clearly indicates that it was not his intention that his will should embrace or dispose of his wife's property, which he held in the manner indicated in clause (2) of his will (and which is all of her property that is involved in this case), and that he so manifested and made it to "so appear by his will."

But it is said that in determining the question the two wills should be construed together, and especially when executed on the same occasion and when, perhaps, each of them was drafted by the same draftsman on the one occasion. Therefore, it is argued that the wife in her will, by clause eight therein, expressly renounced her intention to execute a similar power under her husband's will, and that the fact that the husband put no similar clause in his will, should be considered as a strong circumstance indicating that he intended to execute the power conferred upon him by his wife's will. The argument is not without force and is entitled to its due and proper weight, and possibly might be given controlling effect were it not for the second clause, supra, in the husband's will, and in which he cleared away and cast to the windward all doubt about the property that he intended to embrace in and to devise by his will. Having so eliminated his wife's property from disposition by him in his will, it would have been useless to incorporate a similar clause in later parts thereof corresponding to clause eight in his wife's will; but which exclusion it was necessary for the wife to insert in her will in order to prevent it from operating as an exercise of the power given to her by her husband in his will, since she had not incorporated in her will any clause corresponding to clause two contained in her husband's will. Without more extended discussion we conclude that the undisputed facts clearly reveal that the husband did not intend to, nor did he, execute the power in his will given to him by his wife in her will, and that the court erred in so holding.

The testator carried four policies on his life in different companies. In one of them, which was for the amount of $3000 payable on his death, his wife was named as beneficiary—the other three being made payable to his estate. In the one in which his wife was the named beneficiary there was a provision contained in the policy whereby the beneficiary might be changed by the insured, and provisions were inserted as to how,

that could be done. They, however, were for the benefit of the insurance company and did not necessarily affect the right of the insured to change the beneficiary as be- tween him and her. In such policies we have constantly held that the beneficiary took no absolute vested interest in the proceeds of the policy during the lifetime of the insured, but at most only a contingent interest, dependent upon the happening of later defeating facts, one of which is the exercise by the insured of the right to change the beneficiary given to him in the policy contract. See Howe v. Fidelity Trust Company of Louisville, Trustee, 89 S. W. 521, 28 Ky. Law Rep. 485; Twyman v. Twyman, 201 Ky. 102, 255 S. W. 1031; Hoskins v. Hoskins, 231 Ky. 5, 20 S. W. (2d) 1029, and Colovos' Adm'r v. Gouvas et al., 269 Ky. 752, 108 S. W. (2d) 820, 113 A. L. R. 871. The opinions in those cases fully and completely sustain the court's ruling in holding that the husband in this case had the right to dispose in his will of the proceeds of, not only the three insurance policies payable to his estate, but also the one in which the wife was named the beneficiary, and that such proceeds form no part of the wife's estate which she could or did dispose of by her will. So much of the judgment as so determined is approved.

Wherefore, the judgment is reversed on the original appeal and affirmed on the cross appeal, with directions that the trial court set it aside insofar as the determination is made therein of question (1), supra, and to enter one in accordance with this opinion. The costs of this litigation will be paid by appellant out of the income from the trust property.

Whole Court sitting.