E. Rutledge LILLY, Jr.; Mary Elizabeth Hintze; Julia Lilly Atterberry; Margaret Ann Joseph; and Edward Rutledge Lilly, III, Appellants,

v.

CITIZENS FIDELITY BANK and TRUST COMPANY, Trustee Under the Will of J.C. Parker; J. Cooper Lilly; First Kentucky Trust Company, Executor of the Estate of E. Rutledge Lilly; First Kentucky Trust Company as Executor Under the Will of Mary Elizabeth Parker Lilly, and Trustee Under Agreement of July 7, 1978; Robert Lieffers Hintze; Douglas Parker Lilly; James Cooper Lilly, Jr.; and Unborn Issue of Mary Parker Lilly, Appellees.

J. Cooper LILLY, Appellant,

v.

CITIZENS FIDELITY BANK and TRUST COMPANY, Trustee Under the Will of J.C. Parker; E. Rutledge Lilly, Jr.; Mary Elizabeth Hintze; Julia Lilly Atterberry; First Kentucky Trust Company, Executor of the Estate of E. Rutledge Lilly; First Kentucky Trust Company as Executor Under the Will of Mary Elizabeth Parker Lilly, and

Trustee Under Agreement of July 7, 1978; Margaret Ann Joseph; Edward Rutledge Lilly, III; Robert Lieffers Hintze; Douglas Parker Lilly; James Cooper Lilly, Jr.; Unborn Issue of Mary Parker Lilly, Appellees.

Anne Cooper WEISS, Appellant,

v.

Innes W. DOBBINS III; Stephen A. Dobbins; Liberty National Bank & Trust Company; Sanford Weiss; Kosair Charities Committee, Inc.; Bellewood Presbyterian Home for Children, Inc.; Unborn Issue of Ann Parker Dobbins and Anne Cooper Weiss, Appellees.

Nos. 92–CA–124–MR, 92–CA–125–MR and 92–CA–145–MR.

Court of Appeals of Kentucky.

April 2, 1993.

As Modified May 21, 1993.

Discretionary Review Denied by Supreme Court Sept. 22, 1993.

F. Gerald Greenwell, Maureen P. Taylor, Brown, Todd & Heyburn, Louisville, for First Kentucky Trust Co., Trustee under the Will of Mary Parker Lilly.

John A. Wilmes, Louisville, Guardian Ad Litem for Robert Lieffers Hintze.

Douglas Parker Lilly, James Cooper Lilly, Jr.; Unborn Issue of Mary Parker Lilly, Ann Parker Dobbins and Anne Cooper Weiss; and Sanford Weiss, not represented by counsel.

Ann B. Oldfather, Oldfather & Morris, Louisville, for Anne Cooper Weiss.

Joseph R. Gathright, Jr., Gathright & Hardy, Louisville, for Innes & Stephen Dobbins.

William A. MacKenzie, MacKenzie & Peden, Louisville, for Liberty Nat. Bank.

William A. Buckaway, Jr., Tilford, Dobbins, Alexander & Buckaway, Louisville, for Kosair Charities Committee, Inc.

Martin P. Duffy, Peggy Von Werdt, Wyatt, Tarrant & Combs, Louisville, for Bellewood Presbyterian Home for Children, Inc.

Before HUDDLESTON, McDONALD and WILHOIT, JJ.

McDONALD, Judge.

The Jefferson Circuit Court adjudged that a testamentary power of appointment was validly exercised and this appeal followed.

J.C. Parker executed a will on May 28, 1936, and then a codicil to that will on September 20, 1937. J.C. Parker died August 4, 1939.

Surviving J.C. Parker were his wife, Minnie White Parker, and three children, John W. Parker, Ann Cooper Parker Dobbins and Mary Elizabeth Parker Lilly.

The lineage chart, as it applies to this appeal, is depicted as follows:

William Patrick Mulloy, II, Mulloy, Walz, Wetterer, Fore & Schwartz, Louisville, for E. Rutledge, Jr. & III; Hintze; Atterberry; and Joseph.

Homer Parrent, III, Parrent & Parrent, Louisville, for J. Cooper Lilly.

Randolph A. Noe, Greenebaum Treitz Brown & Marshall, P.S.C., Louisville, for Citizens Fidelity Bank & Trust Co.

James T. Carey, Louisville, for First Kentucky Trust Co., Executor of the Will of E. Rutledge Lilly.

Parents

J.C. Parker   and   Minnie White Parker
Died 8/4/39                    Died 12/19/57

Children:

| John W. Parker | Ann Parker Dobbins | Mary Parker Lilly |
|---|---|---|
| Died 9/28/82 | Died 6/1/83 | Died 4/29/89 |

Grandchildren:

| Innis W. Dobbins | Stephen A. Dobbins | Ann Cooper Weiss |
|---|---|---|

Grandchildren:

| J. Cooper Lilly | E. Rutledge Lilly, Jr. | Julia Lilly Atterberry | Mary Eliz. Hintze |
|---|---|---|---|

Great-Grandchildren:

| Douglas Parker Lilly | James Cooper Lilly Jr. | Margaret Ann Joseph | Edward Lilly Rutledge III | Robert Lieffers Hintze |
|---|---|---|---|---|

---

### The Will of J.C. Parker

J.C. Parker bequeathed his personal tangible property and "similar personal belongings" to his wife, if she survived him, and, if not, then the property was to go to his surviving children in equal shares; they were to make "satisfactory" division among themselves. Specific bequests of money were provided, along with the usual directives for payment of necessary expenses and taxes.

The residuary clause created a trust of all property of every description that was not disposed of by the specific bequests. Fidelity and Columbia Trust Company of Louisville was appointed Executor and Trustee under the will. Citizens Fidelity Bank and Trust Company, plaintiff in the trial court and appellee on appeal, became the successor to Fidelity and Columbia Trust Company.

The will provided that the trust would "continue until the death of the longest liver of my wife and the three children of ours." Although the trust is complex, for our purposes Section 2 and Section 3 are significant.

*Section 2* provided in pertinent part:

... [I]n the event my wife survives me, two fifths (2/5) of the net income from said entire trust estate shall be paid annually to my wife for and during her life....

At the death of my wife, she may, by last will and testament or instrument in the nature of a last will and testament, designate to what parties the Trustee shall pay one-half of two fifths (1/2 of 2/5) of the said income from said trust estate and may designate to whom or how one half of two fifths of the principle of said trust estate shall be paid, transferred or conveyed at the termination of said trust. The remaining one-half shall go as set out in Section 3, or should not by last will and testament, or instrument, make the designation above referred to, then the two fifths income from said trust estate and two fifths of

the principal of said trust estate at its termination shall go, as set out in Section 3. . . .

*Section 3*, in pertinent part, provides:

Such income from, and principal of, said trust estate as does not pass under Sections 1 and 2 above, shall constitute a *"descendants' trust fund"* and be used as follows:

One-third of said income from said "descendants' trust fund" shall be used for the use and benefit of my son, John White Parker, and/or his descendants in the manner and to the extent hereinafter provided.

One-third of said income from said "descendants' trust fund" shall be used for the use and benefit of my daughter, Mary Elizabeth Parker Lilly, and/or her descendants in the manner and to the extent hereinafter provided.

One-third of said income from said "descendants' trust fund" shall be used for the use and benefit of my daughter, Ann Cooper Parker Dobbin, and/or her descendants in the manner and to the extent hereinafter provided.

My Trustee is to pay to each of my said children, during his or her life, subject to the conditions and limitations herein stated, one-third of the net income of the "descendants' trust fund" above set out.

*Codicil*

On September 20, 1937, a codicil was added to J.C. Parker's will which provided the following language to the trust:

At the death of any of my children, such child may, by last will and testament, or instrument in the nature of last will and testament, designate to what parties the Trustee shall pay his or her portion of the said income of said trust estate and may designate to whom or how his or her portion of the principal of said trust estate shall be paid, transferred, or conveyed at the termination of said trust.

In the event any child of mine shall not by last will and testament—or instrument, make the designation above referred to, then, upon the death of such child, his or her interest in said trust estate shall pass according to terms of my will set out in Item VII, and Sections 2 and 3 thereof.

By the above, J.C. Parker granted each of his children a general testamentary power of appointment[1] over a portion of the trust established in his will.

The issues on appeal concern the will of J.C. Parker's daughter, Mary Elizabeth Parker Lilly, and her general testamentary power of appointment over the one-fifth portion of the trust. Appellant J. Cooper Lilly argues that his mother, Mary Elizabeth Parker Lilly, had the right to appoint by her own will to anyone one-fifth of the

1.  While Kentucky law recognizes the "power of appointment," it does not specifically define it by statute or case law. For our purposes, and from considering the many cited authorities, a power of appointment is the power or authority given by a donor, such as a testator, to a donee to appoint the beneficiaries of the donor's property, or interest therein which is vested in a person other than the donee of the power. The power may be created by deed or will and is in the nature of a trust. When the power is exercised the donee is disposing of the donor's property. The donee is merely the conduit through which the property passes and it is akin to an agency, which does not create an estate or a right of property in the donee. The essential nature of exercising the power of appointment is that the donee is speaking for the original testator [donor] in directing the devolution of the property of the donor. The nature of the

power is expressed by the donee's own will, a disposition of the property of the donor who by the terms of the donor's will adopted in advance subsequently written words of the donee as disclosing the donor's ultimate testamentary purpose.

A general power of appointment may be exercised in favor of any person, including the donee, whereas, a special power of appointment may be exercised only for the benefit of a particular group or class, which does not include the donee. *See MacLean v. Citizens Fidelity Bank and Trust Co.*, Ky., 437 S.W.2d 766 (1969); *St. Matthews v. DeCharette*, 259 Ky. 802, 83 S.W.2d 471 (1935); *De Charette v. De Charette*, 264 Ky. 525, 94 S.W.2d 1018 (1936); *Ligget v. Fidelity and Columbia Trust Co.*, 274 Ky. 387, 118 S.W.2d 720 (1938); and *Dant v. Fidelity and Columbia Trust Co.*, 302 Ky. 54, 193 S.W.2d 399 (1946).

trust, but she had no right to dispose of her portion of the trust during her lifetime. The will of Mary Elizabeth Parker Lilly disinherited J. Cooper Lilly, her son; therefore, the beneficiaries of her will were three of her four children, namely, E. Rutledge Lilly, Jr., Mary Elizabeth Lilly Hintze and Julia Lilly Atterberry, all appellees.

The record reveals on June 22, 1951, a "Deed of Disclaimer and Release" was signed by Mary E. Parker Lilly for tax purposes. By this maneuver she disclaimed part of her power of appointment which had the effect of converting the general power of appointment to special power of appointment.[2] The reason for the change or conversion of the appointment was because property subject to a "general" power of appointment was at risk not only to the donee's creditors but also to federal estate taxes in the donee's estate (Mrs. Lilly's), whether the general power was exercised or not. Consequently, to give the donee a tax-exempt power, restrictive language had to be used, hence the special power of appointment. By such, Mary E. Parker Lilly limited her power only to her husband, her father's descendants other than herself, spouses of such individuals and certain specific entities, all as a particular class.

Mary E. Lilly's will made no reference to the power of appointment which was executed on July 7, 1978, or of her disclaimer of 1951. Her death in 1989 terminated the J.C. Parker trust by its terms, she being the "longest liver" of Parker's wife and children.

Appellant J. Cooper Lilly's position is that because the power of appointment was not exercised, the result should be that the one-fifth in dispute should be distributed among all of J.C. Parker's descendants of which he is one.

The trial court reasoned and found as follows:

The Trust to which Mrs. Lilly's residuary estate passes excludes [appellant], J. Cooper Lilly, from its benefits. This disinheritance is accomplished by a definition of terms, rather than directly. In Section 1(d) thereof, the term, "Settler's children" is designated to refer to Mrs. Lilly's other three children. Thus, if Mrs. Lilly's Will should be deemed to exercise her power, J. Cooper Lilly would be excluded from participation, not only in his mother's own estate and trust, but also in that portion of his grandfather's trust subject to her power. Mrs. Lilly's Trust provides that net income from the Trust was to passed [sic] to Mr. Lilly, Sr., and after his death trust income is to be divided among Mrs. Lilly's children, (excluding, of course, J. Cooper Lilly) until the death of the last survivor of the children, at which time the trust is to be divided into equal shares among all of Mrs. Lilly's grandchildren (including for this purpose, those grandchildren by J. Cooper Lilly).

Various appeals were taken from the judgment of the circuit court and have been consolidated before us.

The first issue presented states that:
THE JEFFERSON CIRCUIT COURT ERRED IN HOLDING THAT THE LAW IN EFFECT AT THE TIME OF MRS. LILLY'S PURPORTED EXERCISE OF HER POWER OF APPOINTMENT, RATHER THAN THE LAW IN EFFECT AT THE TIME THAT THE POWER OF APPOINTMENT WAS CREATED CONTROLS THE QUESTION OF WHETHER THE POWER IS DEEMED TO BE EXERCISED, WHERE THE WILL DOES NOT SPECIFICALLY ADDRESS THE SUBJECT. . . .

There was a statutory change in Kentucky which played a significant role in the ruling of the circuit court. In 1972, the legislature amended KRS 394.060 to read:
A devise or bequest to any real or personal estate over which the testator has *any* power of appointment, and to which it would apply if the estate was his own

---

**2.** On June 29, 1951, Ann Parker Dobbins, the mother of appellant, Anne Cooper Weiss, executed a similar document, styled "Deed of Disclaimer and Release," obviously executed for the same purpose.

property, and shall operate as an execution of such power, unless a contrary intention appears in the will. (Emphasis added).

The amended statute was the law applicable at the time of Mary E. Lilly's death in 1989.

However, the statute applicable at the time J.C. Parker's will and codicil were written, in 1937 and 1939 respectively, read almost the same with this exception: "a devise or bequest ... over which the testator has *a discretionary* power of appointment...." (Emphasis added). The change was from "a discretionary power" to "any power" of appointment.

Prior in time the common law rule prevailed. The common law was superseded by the predecessor to KRS 394.060 in 1852.[3] The codification of the common law, which changed it somewhat, states that a power of appointment is deemed exercised by will if silent on the subject unless a contrary intention is expressed.

The older statute, as interpreted by *MacLean v. Citizens Fidelity Bank and Trust Co.*, Ky., 437 S.W.2d 766 (1969), only applied to the general powers of appointment. Therefore, under *MacLean*, a special power of appointment did not fall within the statute. The older statute and the *MacLean* theory were clearly the law at the time J.C. Parker executed his will and codicil, and at the time of his death.

The statutory change in 1972 empowered the statute to encompass "any" power of appointment which we construe would, without being absurd, include special powers of appointment. Therefore, a donor, such as Mary E. Lilly, holding a power of appointment, either general or special, is deemed to exercise such, by will, even if the will made no reference to the power. Her will was written in 1978.

Appellant J. Cooper Lilly argues that the 1972 law should not apply to the will of Mary E. Lilly written in 1978, because the doctrine of "relation back" would require the law at the time the power of appointment was created in 1939 to apply when the power was exercised.

The simplicity of the appellant's argument is: if you apply the older statute, he will inherit a percentage of J.C. Parker's estate, his grandfather's; if you apply the 1972 statute, his percentage of the estate will pass to his siblings because of his mother's, Mary E. Lilly's, power of appointment to his siblings only, thereby disinheriting the appellant. However, his children would inherit as all other grandchildren.

The circuit court reasoned that KRS 394.060, as amended in 1972, applied to Mary E. Lilly's will executed on July 7, 1978. The circuit court's opinion said:

> There is simply no logic in making her will executed in 1978 subject to laws in effect in 1939, or 1951. That is an impractical application of the law, and too great a burden to place on our citizens.

We agree. The law in effect at the time of the testator's death is the law which must be applied. *See Morse v. Alley*, Ky.App., 638 S.W.2d 284 (1982), and *Welsh v. Robison*, Ky.App., 702 S.W.2d 455 (1986). It is not practical to impose on someone making a will, in anticipation of a future event (death), to be controlled in present circumstances by inapplicable law of many years past.

Appellant urges us to follow New York law which applies the law throughout that was in effect when the power of appointment was created, not when the power was exercised. *See In re Estate of Levine*, 76 Misc.2d 469, 351 N.Y.S.2d 77 (1973), and *In the Matter of Granirer*, 131 A.D.2d 477, 516 N.Y.S.2d 244 (1987). The New York rule adopts a "relation back" theory to bootstrap in the effectiveness of the power as to the time of creation. We reject the so-called "New York" rule and hold that the 1972 amendment of KRS 394.060 is the applicable law to Mary E. Lilly's exercise of her power of appointment in her will of 1978.

The next issue asserts that the circuit court erred in determining that Mary E. Lilly did not express an intention not to

---

**3.** Rev. Statutes of Ky., C.A. Wickliffe, S. Turner, and F.S.S. Nicholas (1852).

exercise her power of appointment. Appellant argues that even if the 1972 amended version of KRS 394.060 is applied, there is a built-in escape clause in the statute which counteracts the presumption in favor of the exercise of the power of appointment. The escape clause is, if "... a contrary intention appears in the will." Silence on the matter will be an exercise of the power.

Did Mary E. Lilly, expressly or impliedly, intend to refrain in her will from exercising her donee powers of appointment granted to her by J.C. Parker? The circuit court commented that she knew of the power of appointment because she attempted to limit it by the Deed of Disclaimer in 1951, for tax purposes. Then what did she do in her will of 1978 to convey an intent not to exercise her presumptively known power? Repeated examination of her will, and the circumstances surrounding it, lead inexorably to only one result, which is contrary to the interest of appellants.

Appellant J. Cooper Lilly relies on *United States v. Winchester*, 277 Ky. 434, 126 S.W.2d 814 (1939), advocating the proposition that the intention of testator must be extracted from the four corners of the instrument, and that, while the intention need not be express, nevertheless, it must come from the "four corners." The purpose of the statute was to avoid inadvertent failures to exercise powers. Mrs. Lilly had knowledge about her powers, so there was nothing inadvertent in her actions. Appellant argues she purposely did not mention her powers of appointment because it was her intent not to exercise them.

Although appellant's argument is well made, we just do not accept its logic or reasoning. The only way to find a contrary intention in Mrs. Lilly's will is to make it up. The fact that Mrs. Lilly did not mention the power of appointment is precisely covered in the statute. It was necessary for her to make her intention known, and if the intention was not made known, the statute was self-executing on her behalf. Her silence exercised the powers of appointment by a clearly written residuary clause which did not diminish the estate but only the number that would take. Looking back, we see that the wishes and intent of J.C. Parker were complied with as to his will and trust.

■ Appellant J. Cooper Lilly's argument about the violation of the Rule Against Perpetuities does not move us to reverse the circuit court. His argument is, as quoted from his brief, thus:

The Rule invalidates interests in trusts which vest more than twenty-one (21) years after the last to die of those beneficiaries who were living when the interest was created. In the case of a testamentary power of appointment, such as in the case at bar, the date of death of the original testator constitutes the time of the creation of the interest, i.e., the beginning point for the running for the time period allowed under the Rule. KRS 381.215; *DeCharette vs. Decharette*, supra. Thus, in this case, the beginning point for the measurement of the period allowable under the Rule is August 4, 1939, the date of death of J.C. Parker, the creator of the power of appointment. At his death, he was survived by his spouse, three children and two grandchildren. Of those persons, one beneficiary provided for under Mrs. Lilly's will is still living. That individual is the Appellee, E. Rutledge Lilly, Jr. Hence, E. Rutledge Lilly, Jr. serves as the measuring life for purposes of the Rule. Accordingly, any appointment of Parker trust assets made by Mrs. Lilly can only be valid if the property appointed will vest on or before twenty-one (21) years after the death of E. Rutledge Lilly, Jr. Stated conversely, Mrs. Lilly's appointment under her father's trust will be invalid if, by its terms, it would cause such property to vest more than twenty-one (21) years after E. Rutledge Lilly Jr.'s death.

The possibility of the invalidity of trust provisions under the Rule is the reason why a testator utilizes a "perpetuity savings clause" and in Section 11 of Mrs. Lilly's trust agreement, she utilized such a clause. The clause supersedes any of the other distributional provisions in the

trust if such provisions would otherwise result in violating the Rule. The specific terms of the perpetuity savings clause in Mrs. Lilly's trust require that the trust terminate twenty-one (21) years after the death of the last to die of Mrs. Lilly's husband, children and grandchildren *living at the date of Mrs. Lilly's death.*

The aforesaid clause in the Lilly trust would be effective to prevent violations of the Rule insofar as Mrs. Lilly's own assets were concerned. However, the heart of this argument is that the clause in question will not prevent violations of the Rule *insofar as assets appointed from the J.C. Parker trust are concerned.* That is because the interests in the J.C. Parker assets must, under the rule, vest within twenty-one years of E. Rutledge Lilly, Jr.'s death. Whereas, the clause in Mrs. Lilly's trust would not necessarily require vesting at that time. For example, if any of Mrs. Lilly's grandchildren who were living at her death should survive E. Rutledge Lilly, Jr. by more than twenty-one (21) years, the Rule would be violated insofar as the assets of the J.C. Parker trust are concerned, and yet, the perpetuity savings clause contained in the trust would not salvage those interests.

The circuit court ruled there was no violation of the Rule Against Perpetuities; that the circumstances were similar to those found in *De Charette v. De Charette, supra.* Therefore, by striking or holding ineffective that part of Mrs. Lilly's appointment because it attempted to delegate a non-delegable power, the circuit court said:

> ... carrying back her appointment as if made by J.C. Parker in the 'Descendants Trust', we have a bequest to Mrs. Lilly for life and then to her descendants which according to *DeCharette, supra* and authorities cited therein "... in common parlance, and as used generally, it signifies immediate descendants—children." The bequest accordingly has to vest within a life in being plus 21 years, as none of J.C. Parker's children can produce children after their death.

*See also, Ligget v. Fidelity and Columbia Trust Co., supra.* We are in harmony with the opinion of the circuit court that the Rule Against Perpetuities was not violated.

Lastly, Appellant J. Cooper Lilly claims that Mary Lilly's deed of disclaimer deprived her of the power to appoint her portion of the J.C. Parker Trust to another trust; hence, even if her will should be deemed to exercise the power of appointment, such an exercise was invalid.

Appellant's argument goes like this. If Mary Lilly's 1951 executed instrument called a "Deed of Disclaimer and Release" is held to be a valid exercise of converting a general testamentary power of appointment to a special testamentary power of appointment, then by doing such, she limited her power of appointment to a particular group or class of which a "trust" is not named. Therefore, it logically follows that her 1978 will and trust were a futile effort to exercise the power of appointment, having been eliminated by her actions in 1951. The 1978 power of appointment was a failed exercise because of a lack of power to appoint to a trust by the 1951 disclaimer.

We conclude, as did the circuit court before us, that as long as the 1951 disclaimer did not reject the power to appoint to a trust, then a trust in the future could be an appointee as long as the object of the original powers would be satisfied. Here, that was accomplished. This conclusion follows the general law expressed in 72 C.J.S. *Powers* § 15 (1987):

> Under a power of appointment, either general or special, containing no restriction as to the nature of the estate to be raised, the donee is not limited to an appointment of the legal estate, but may execute the power by an appointment in trust for the objects of the power, except where the instrument expressly or impliedly shows that the donor intended the appointees to take absolutely and not in trust.

In the separate appeal of Anne Cooper Weiss, consolidated herein, it is argued that the exercise by Mrs. Lilly and Mrs. Dobbins of identical powers of appointment to a

trust was invalid, in that the power of appointment remaining to them did not encompass the power to appoint to a trust. The difference between the Lilly and Dobbins "Deed of Disclaimer and Release" was that Mrs. Dobbins made a specific reference to the power of appointment in her will, whereas Mrs. Lilly did not.

Excerpts from Mrs. Dobbins' will and trust, executed in 1978, state:

> By the terms of the Will of my late father, J.C. Parker ... and the Codicil thereto, ... as modified by a "Deed of Disclaimer and Release" dated June 29, 1951, ... I was given a power to appoint certain property.

> I exercise such aforementioned power of appointment per stirpes in favor of my descendants, provided, however, that any portion in favor of my daughter, Anne Cooper Weiss, shall be transferred to the Bank as Trustee, under a Trust Agreement dated 7–6–72....

The circuit court, by amended findings of fact and judgment, pursuant to motions under CR 52.02 and CR 59.05, found that the Lilly and Dobbins "Deed of Disclaimer and Release," respectively, were valid and converted their general powers of appointment to special powers of appointment; that because Mrs. Dobbins failed to reserve the right to appoint to her trustee in the "Deed of Disclaimer and Release" of June 29, 1951, whereby the general power of appointment was converted to a special power held under the will of J.C. Parker, was of no legal significance because the general rule permits such appointment in trust for the objects of the power.

Appellant Weiss's argument, in a nutshell, is thus:

> It is the position of Anne Cooper Weiss that her mother effectively exercised her power of appointment with respect to the appointment of the property "per stirpes in favor of my descendants;" to the extent that Mrs. Dobbins goes further and limits Anne Cooper Weiss's share to a trust, Mrs. Dobbins had not reserved to herself the power to appoint to a trust and, hence, the restriction of Mrs.

Weiss's per stirpes interest to a trust is invalid.

To convince us that Mrs. Dobbins denied or restricted herself in the ability to exercise her power of appointment for her daughter to appoint to a trust, Weiss attacks the 1951 Disclaimer. Mrs. Dobbins' use of a double negative in the Disclaimer to define the class of persons as objects of the power of appointment eviscerated the general rule of construction that the donee of the power is not limited to the legal estate but may appoint for the objects of the power. 72 C.J.S., *Powers*, § 15, *supra*.

■ While Appellant Weiss's argument is imaginative, we can best determine Mrs. Dobbins' intent by what she did. Mrs. Dobbins plainly appointed to a trust. We conclude that, unless there is language specifically to the contrary, a general or special power of appointment may be exercised in favor of a trust, so long as the objects of the power of appointment are satisfied.

Weiss stands on two foreign authorities: *In re Kennedy's Will*, 279 N.Y. 255, 18 N.E.2d 146 (1938), and *Union & New Haven Trust Co. v. Taylor*, 133 Conn. 221, 50 A.2d 168 (1946). *In re Kennedy's Will* held there was no power to appoint to a lesser estate by appointing to a trust. The *Union & New Haven Trust Co.* case says the donee of a power to appoint to an absolute estate may not appoint to a lesser estate in violation of the donor's intent.

Because the J.C. Parker trust estate terminated on the death of Mary Parker Lilly in 1989, Appellant Weiss's mother, Ann Parker Dobbins, did not have the power to appoint the principal of the trust in further trusts because J.C. Parker's expressed intent was that the trust estate be "distributed per stirpes."

Appellee Liberty National Bank points out that, in the codicil of J.C. Parker's will where the power of appointment was established, Parker provided that at the death of any of his children, such child "... may designate to whom or how his or her portion of the principal of said trust estate shall be paid, transferred or conveyed at

the termination of said trust." This language clearly negates Weiss's contention notwithstanding the cases cited from foreign jurisdiction. We are not persuaded that J.C. Parker's intent was violated in the subsequent appointments to a trust.

All appeals from the Jefferson Circuit Court's Findings of Fact, Conclusions of Law, Judgment, and Amended Judgment, lodged in appeals numbered 92–CA–124–MR, 92–CA–125–MR and 92–CA–145–MR, are affirmed.

All concur.