GEORGE D. WALSH, ROBERT M. WALSH, ALEXIS B. WALSH, JOSEPH D. WALSH, MARY WALSH DUNNE, CHARLES H. WALSH, ELIZABETH WALSH ANHUT AND LOUISE WALSH AMAN v. EMANUEL FRIEDMAN, TRUSTEE, ANNIE B. KEYS, THE ST. EMMA INDUSTRIAL & AGRICULTURAL INSTITUTE, ROSA DALTON, WILL NIXON, NANCY DALTON, HENRY DALTON, AND ALL OTHER PERSONS WHO MAY NOW OR HEREAFTER HAVE OR CLAIM UNDER THE WILL OF CATHERINE WALSH AN INTEREST IN THE LANDS HEREINAFTER DESCRIBED.

(Filed 26 February, 1941.)

1. Wills § 38—

A clause will be construed as a residuary clause if the intention is apparent from the instrument that the clause should operate to dispose of all of the property of the testator not otherwise disposed of.

**2. Same: Wills § 33f—A residuary clause will operate as an exercise of a power of disposition unless contrary intention appears from the will.**

Under the will in question testatrix' daughter took a life estate in the *locus in quo* with power of disposition during her lifetime but without power of disposition by will. Three of testatrix' sons were given life estates in the property after the termination of the daughter's life estate, with power to each to dispose of one-third of the land by will, with further provision that upon their failure to exercise the power of disposition the property should go to testator's grandchildren *per stirpes*. All the sons predeceased their sister. One of the sons left a will containing a residuary clause in favor of his sister. *Held:* The residuary clause operated as an exercise of the power of disposition, no contrary intent appearing in the son's will, and testatrix' daughter took the fee simple under her brother's will to that part of the *locus in quo* over which he had power of disposition.

**3. Wills § 31—**

A will must be construed to give effect to the intention of the testator as expressed in the language used construed from the four corners of the instrument unless such intent is contrary to some principle of law or public policy.

**4. Wills §§ 33f, 34—Will held to devise daughter life estate with power of disposition during her lifetime, but did not convey fee to daughter or give her power of disposition by will.**

The will in question devised the *locus in quo* to testatrix' daughter for life with power to sell or dispose of the whole or any part during her life, with further provision that upon her death the land should go to testatrix' three sons for life with power of disposition by will to the sons, with further provision that if the sons failed to exercise the power of disposition the land should go to testatrix' grandchildren *per stirpes*. *Held:* The daughter did not take the fee simple to the *locus in quo*, but took only a life estate with power of disposition during her lifetime and without power to dispose of same by will, and the fact that testatrix' sons predeceased testatrix' daughter does not enlarge the daughter's interest in the lands.

**5. Wills § 34c—**

The words *"per stirpes"* are not words of inheritance but merely indicate that the property devised shall be distributed by representation among the devisees designated in the will.

**6. Same—Where testatrix leaves land to grandchildren per stirpes and only one of testatrix' children leaves children him surviving, such children take the entire locus in quo as a class.**

The will in question devised to testatrix' daughter a life estate with power of disposition during her life but not by will, with provision that upon the death of the daughter the land should go to three of testatrix' sons for life with power to each to dispose of one-third of the land by will, with further provision that upon failure of the sons to exercise the power of disposition the land should go to testatrix' grandchildren *per stirpes*. Two of the sons predeceased testatrix' daughter without exercising the power of disposition and one of them left children him surviving, which children were the only grandchildren of testatrix. The other son prede-

ceased testatrix' daughter but exercised the power of disposition in favor of the daughter. Testatrix' daughter died leaving a will devising the entire *locus in quo* to a trustee for charitable purposes. *Held:* The grandchildren of testatrix take as a class the share of both sons who failed to exercise the power of disposition, and are entitled to recover same as against the devisee of testatrix' daughter.

**7. Wills § 39—**

Where, in an action to determine the rights of the respective parties in the lands devised, it is held that plaintiffs are entitled to two-thirds of the *locus in quo* and defendant is entitled to one-third, the cost should be taxed in that proportion, and plaintiffs are entitled to recover of the defendant, who took and remained in possession, two-thirds of the rents and profits from the date plaintiffs' right of possession attached.

APPEAL by respondents, defendants, from *Thompson, J.,* at Chambers in Elizabeth City, PASQUOTANK County, on 11 October, 1940. Modified and affirmed.

This is an action brought by petitioners, plaintiffs, against respondents, defendants, to recover certain land in Pasquotank County, N. C.

Margaret B. Walsh died testate on 7 December, 1902, a citizen and resident of the State of New Jersey. At the time of her death she was seized and possessed of the lands which are the subject of the present action, said land being in Pasquotank County, North Carolina. She left her surviving five sons and one daughter, Catherine Walsh. Her original will is dated 17 May, 1886, but at various times after said date until the time of her death Margaret Walsh added various codicils to the original, some of which materially changed the original provisions. The fourth or next to the last codicil, which is dated 8 February, 1899, very materially changed the provisions theretofore existing. The material parts for the determination of this action are as follows:

Item, in part, under codicil of 17 May, 1886: "Upon the death of my daughter Catherine without having been married and without having entered a convent, I give and bequeath the same to and among such of my four sons, William S; John F.; Charles H. and Henry C., as may be then living and the children then living of such as may have died *per stirpes,* in equal shares, absolutely."

Item, in part, under codicil of 8 February, 1899 (next to the last codicil): "Item:—By my said will I gave my residuary estate subject to a provision for my son Robert unto my daughter Catherine until she married, entered a convent or died. Now I desire to revoke so much of that will as refers to her marriage or entering a convent and now give and bequeath Catherine during her life, without security with power to sell or dispose of the whole or any part of my real and personal estate during her life, with the right to use the proceeds of any such sale toward her support, re-investing any balances in any way she may deem most

WALSH *v.* FRIEDMAN.

advantageous not confining herself to legal investments if there be any balance. . . . Item: Upon the death of my daughter I give, devise and bequeath unto my three sons William S. Walsh, Charles H. Walsh and Henry C. Walsh my real and personal estate subject to the provision for my son Robert, for and during their respective lives without being required to give security for the same. I have left out my son John Francis because he has been left an annuity. I direct, however, that if for any cause that annuity becomes reduced his brothers shall make up the difference to him from the income of my estate.

"Item:—In the event of my son John Francis marrying, I authorize my four sons William S. Walsh, John F. Walsh, Charles H. Walsh and Henry C. Walsh each to dispose of one fourth of my residuary estate by will, subject, however, to the provision in favor of my son Robert and my daughter Catherine and in default of such disposition, I direct that my estate shall descend to the children of my said four sons *per stirpes.* In the event of my son John Francis remaining unmarried, I empower my three sons William S. Walsh, Charles H. Walsh and Henry C. Walsh each to dispose of one-third of my said residuary estate by will subject as aforesaid and in default of such disposition, I direct that the same shall descend to the children of my said three sons *per stirpes.*"

The last codicil: "I desire to give my daughter Catherine Walsh the right to will the hundred shares of Pennsylvania Railroad stock. The remainder of my property at her death to be divided amongst my sons according to my Will and Codicils."

Catherine Walsh, Margaret B. Walsh's daughter, outlived all of her brothers, and died testate on 9 November, 1937, her will being dated 11 June, 1937. Sec. 9, in part, is as follows:

"Ninth. I give and devise all of my real property, including the improvements thereon, in the State of North Carolina, to Emanuel Friedman, in fee simple, in trust for the persons and corporations and the uses following:" (naming them).

The petitioners are all of the eight living grandchildren of the late Margaret B. Walsh, who died testate on 7 December, 1902, a citizen and resident of the State of New Jersey; that at the time of her death the said Margaret B. Walsh was seized and possessed in fee simple of the certain tract or parcel of land free and clear of all encumbrances, described as follows: "That certain tract or parcel of land in Salem Township, Pasquotank County, bounded on the North and East by Flatty Creek; on the South by the Robinson or Leigh farm and the public road, and on the West by the Lister land, and is known as the Walsh or Mullen farm."

Margaret B. Walsh left her surviving six children, to wit: William S. Walsh, John F. Walsh, Charles H. Walsh, Henry C. Walsh, Robert M.

Walsh and Catherine Walsh. Under and by virtue of the next to the last codicil to the last will and testament of Margaret B. Walsh, the land in controversy was devised to Catherine Walsh for life, with power to dispose of the same during her life and after her death said land was devised to William S. Walsh, Charles H. Walsh, and Henry C. Walsh, sons of Margaret B. Walsh, for and during their respective lives, with power to dispose of their respective shares by will; and in default of such disposition by will, the said property was to descend to the children of four of the sons of the testatrix, Margaret B. Walsh, viz.: the children of John F. Walsh, William S. Walsh, Charles H. Walsh and Henry C. Walsh. John Francis Walsh, son of Margaret B. Walsh, never married and, therefore, never had power to dispose of any of the property by his will or otherwise. Catherine Walsh neither attempted to nor did transfer any of the said property during her lifetime and all of the sons of the testatrix, Margaret B. Walsh, died before the vesting of their life estates and without disposing of the remainder by will; except that William S. Walsh died testate on 8 December, 1919, leaving the residue of his property to his sister, Catherine Walsh.

The material part of his will is as follows: "I give and bequeath to my sister Catherine Walsh all the residue of my property real and personal subject to any widow's rights emmanent in Mrs. Harriet M. Walsh, my house and furniture and six acres opposite Lynch's are already her property by deed dated November, 1913, and duly recorded in Newton whose conditions she has fulfilled in advance having paid me more than the stipulated two thousand dollars. I constitute the said Catherine Walsh my executor as well as my residuary legatee unless she predecease me when I give and bequeath to my brother Henry C. Walsh and Dr. J. F. Walsh all that I hereby leave to my sister, including property real and personal, book copyrights, etc. I appoint Henry C. Walsh my executor if my sister predecease me."

John F. Walsh died on the ..... day of ...... ........ , 1933; Charles H. Walsh died on 9 May, 1912; Henry C. Walsh died on 29 April, 1929, and Robert M. Walsh died on the .... day of ....... ........ ., 1919. Catherine Walsh, daughter of Margaret B. Walsh, never married and died testate on 9 November, 1937, a citizen and resident of the State of Pennsylvania. By Item 9 of her last will and testament, the said Catherine Walsh disposed of the land described in this petition to the respondents, defendants, devising and granting to them various and certain interests in and to said land. All the wills and codicils have been duly probated in Pasquotank County, N. C., where the land in controversy is situated.

The judgment of the court below is as follows:

"This cause having heretofore come to be heard on the 11th day of October, 1940, before the undersigned Judge of the Superior Court, in Chambers, and the Court, having heard and considered the pleadings, the stipulations and admissions in the record, and the argument of counsel, for both sides, finds the following facts, to-wit:

"1. That the petitioners are all the grandchildren of Margaret B. Walsh, deceased, and are the only grandchildren she ever had, all of them being the children of her son Charles H. Walsh, deceased.

"2. That the said Margaret B. Walsh, died testate on the 7th day of December, 1902, leaving the Will and Codicils thereto as set forth in petitioners' Exhibit A in this cause; that she left her surviving six children, William S. Walsh, John F. Walsh, Charles H. Walsh, Henry C. Walsh, Robert M. Walsh and Catherine Walsh.

"3. That John F. Walsh died testate on the ..… day of ............. ...., 1933, and, having never married, had no power to dispose of any of the land involved in this controversy; that Charles H. Walsh died intestate on the 9th day of May, 1912, survived by his children, the petitioners herein; that Henry C. Walsh died intestate on the 29th day of April, 1929; that Robt. M. Walsh died intestate on the ...... day of ................, 1919; that William S. Walsh died testate on the 8th day of December, 1919, leaving the Will set forth in petitioners' Exhibit B in this cause; and that Catherine Walsh died testate on the 9th day of November, 1937, leaving the Will set forth in petitioners' Exhibit C in this cause.

"4. That by his Will, William S. Walsh, after making certain bequests to his wife, devised the residue of his estate to his sister, Catherine Walsh.

"5. That the aforesaid wills of Margaret B. Walsh are all duly of record in the office of the Clerk of the Superior Court of Pasquotank County in which is situate the land in controversy.

"6. That Catherine Walsh did not dispose of the lands in controversy except as appears from her said Will, petitioners' Exhibit C.

"WHEREUPON, the Court is of the opinion and adjudges and decrees as follows, to-wit:—

"(a) That Catherine Walsh, under the Will of her mother, Margaret B. Walsh, took a life estate in the land in controversy, with power of disposition during her life, but had no power whatsoever to dispose of said land by her will.

"(b) That John F. Walsh, the son of Margaret B. Walsh, never married and under the Will of Margaret B. Walsh, her sons, William S. Walsh, Charles H. Walsh and Henry C. Walsh, were devised life estates in the land in controversy after the death of Catherine Walsh, with power to dispose of one-third of the remainder interest by their respective wills.

"(c) That the Will of William S. Walsh, the only one of the aforesaid sons who left a will, did not exercise the power given him and Catherine Walsh took no interest in these lands by reason of said Will.

"(d) That by virtue of the provisions of the next to the last Codicil to the Last Will and Testament of Margaret B. Walsh, the land in controversy descended to her grandchildren, the petitioners herein, on the failure of the sons of Margaret B. Walsh to exercise the powers given them.

"(e) That by reason of the next to the last Codicil to the Last Will and Testament of Margaret B. Walsh and by reason of the matters and things hereinbefore set forth, the petitioners herein are the sole owners and are entitled to the immediate possession of the following described tract of land, to-wit: 'That certain tract or parcel of land in Salem Township, Pasquotank County, bounded on the North and East by Flatty Creek; on the South by the Robinson or Leigh farm and the public road, and on the West by the Lister land, and is known as the Walsh or Mullen farm.'

"(f) That the petitioners have and recover of the respondents all rents and profits that have accrued from the above described land since the death of Catherine Walsh, that is, since November 9, 1937.

"(g) That petitioners have and recover of the respondents the costs of this action to be taxed by the Clerk."

To the foregoing judgment the respondents, defendants, excepted, assigned error and appealed to the Supreme Court.

*M. B. Simpson and R. M. Cann for plaintiffs, petitioners.*
*Wilbur H. Royster for defendants, respondents.*

CLARKSON, J. The first exception and assignment of error made by defendants, respondents, we think must be sustained—which is as follows: "For that the Court found as a matter of law that the Will of William S. Walsh did not exercise the power given him and Catherine Walsh took no interest in these lands by reason of said Will."

The pertinent parts of the codicil to the will of Margaret B. Walsh, after leaving a life estate to her daughter, Catherine Walsh, provides: "Now give and bequeath my said residuary estate unto my daughter Catherine, during her life, without security with power to sell or dispose of the whole or any part of my real and personal estate during her life, with the right to use the proceeds of any such sale toward her support, reinvesting any balance in any way she may deem most advantageous not confining herself to legal investments if there be any balance. . . .
Item:—Upon the death of my daughter I give, devise and bequeath unto my three sons William S. Walsh, Charles H. Walsh and Henry C. Walsh

my real and personal estate subject to the provision for my son Robert, for and during their respective lives without being required to give security for the same. I have left out my son John Francis because he has been left an annuity. . . . I direct that my estate shall descend to the children of my said four sons *per stirpes.* In the event of my son John Francis remaining unmarried I empower my three sons William S. Walsh, Charles H. Walsh and Henry C. Walsh each to dispose of one-third of my said residuary estate by will subject as aforesaid and in default of such disposition, I direct that the same shall descend to the children of my said three sons *per stirpes."* John Francis Walsh never married. Catherine Walsh, daughter of Margaret B. Walsh, never married, and died testate on 9 November, 1937, a citizen and resident of the State of Pennsylvania; by Item 9 of her last will and testament, the said Catherine Walsh disposed of the land in controversy to the respondents, defendants, devising and granting to them various and certain interests in and to said land—viz., section 9 : "I give and devise all of my real property, including the improvements thereon, in the State of North Carolina, to Emanuel Friedman, in fee simple, in trust for the persons and corporation and the uses following" (naming them), etc. They are the defendants in this action.

William S. Walsh, under the codicil to the will of his mother, Margaret B. Walsh, was empowered "to dispose of one-third of my said residuary estate by Will." Before the death of Catherine Walsh (who died 9 November, 1937), William S. Walsh made a will on 3 November, 1914 (he died 8 December, 1919), disposing of his property, as follows : "I give and bequeath to my sister Catherine Walsh all the residue of my property real and personal subject to any widow's rights, . . . I constitute the said Catherine Walsh ·my executor as well ás my residuary legatee unless she predecease me when I give and bequeath to my brother Henry C. Walsh and Dr. J. F. Walsh all that I hereby leave to my sister including property real and personal, book copyrights, etc. I appoint Henry C. Walsh my executor if my sister predecease me."

As has been hereinbefore noted, the codicil to the will of Margaret B. Walsh endowed certain of her sons with power to dispose of "one-third of my said residuary estate by Will." Since it is admitted in the pleadings that John Francis Walsh never married, and that William S. Walsh was the only son who left any will at all, we must now consider whether his will executed the power he had.

In *Van Winkle v. Missionary Union,* 192 N. C., 131 (134), we find : "The legal characteristics of a residuary clause in a will are described as follows, by *Walker, J.,* in *Faison v. Middleton,* 171 N. C., 170 : 'Residue, meaning that which remains, no particular mode of expression is necessary to constitute a residuary clause. The words "rest," "resi-

due" or "remainder" are commonly used in the residuary clause, whose natural position is at the end of the disposing portion of the will; but all that is necessary is an adequate designation of what has not otherwise been disposed of, and the fact that a provision so operating is not called the residuary clause is immaterial.' In discussing the question of a residuary clause in a will the learned Justice says further: 'In order to ascertain what is given, or whether any particular thing is well given, by a specific gift, you must look to see whether that particular item is included. The question is whether it is included or not; but once given a residuary gift large enough in its language to comprehend residue, the question is, not what is included, but what is excluded.' *Gordon v. Ehringhaus,* 190 N. C., 147."

William S. Walsh, by his will, executed on 3 November, 1914, devised "all the residue of my property, real and personal" to his sister Catherine Walsh. "I constitute the said Catherine Walsh my executor as well as my *residuary* legatee." He did not refer expressly to the power of appointment given him in the will of his mother Margaret B. Walsh, nor to the land in controversy. Was the power given by the next to the last codicil of the will of Margaret B. Walsh to William S. Walsh to devise a one-third interest in the land in controversy executed by the residuary clause of the will of William S. Walsh, devising the residue of his property to Catherine Walsh? We think so.

C. S., sec. 4167 (1844), is as follows: "A general devise of the real estate of the testator, or of his real estate in any place or in the occupation of any person mentioned in the will, or otherwise described in a general manner, shall be construed to include any real estate, or any real estate to which such description shall extend, as the case may be, which he may have power to appoint in any manner he may think proper; and shall operate as an execution of such power; unless a contrary intention shall appear by the will; and in like manner a bequest of the personal estate of the testator, or any bequest of personal property, described in a general manner, shall be construed to include any personal estate, or any personal estate to which such description shall extend, as the case may be, which he may have power to appoint in any manner he may think proper, and shall operate as an execution of such power, unless a contrary intention shall appear by the will." No contrary intention appears by the will in the present case.

In *Johnston v. Knight,* 117 N. C., 122 (123-4), we find: "When it is not done in express terms, by reference to the power or the subject, then a construction must be given by looking to the whole instrument and the intent therein, for the intent must govern. If the donee of the power intends to execute, that intention, however manifested—whether directly or indirectly, positively or by just implication—will make the

execution valid and operative. 'The general rule is settled that a general residuary devise will operate as an execution of a power to dispose of property by will, unless there is something to show that such was not the testator's intention.' *Cumston v. Bartlett,* 149 Mass., 243." 91 A. L. R., 437 (440, 445).

In *Smith v. Mears,* 218 N. C., 193 (197), citing a wealth of authorities, it is said: "*In limine,* it may be well to recall that the guiding star in the interpretation of wills, to which all rules must bend, unless contrary to some principle of law or public policy, is the intent of the testator, and this is to be ascertained from the language used by him, 'taking it by its four-corners,' and considering for the purpose the will and any codicil or codicils as constituting one instrument."

By a careful reading of *Carraway v. Moseley,* 152 N. C., 351, it can readily be differentiated from *Johnston v. Knight, supra,* for the question of whether there was an execution of the power in the *Carraway case, supra,* as not a question of a general devise in a residuary clause but a special devise in a separate item of the will wherein from the express words the Court held that Snoad B. Carraway had not intended to execute the power.

The decision in *Herring v. Williams,* 158 N. C., 1 (on rehearing), is based on the conclusion that the words used in the will are not sufficient to create power to dispose of the real property of the testator in fee.

By the will of William S. Walsh, Catherine Walsh, life tenant, became seized and possessed in fee of an undivided one-third interest in the lands in controversy; and thereby she devised this one-third interest in fee in her will to respondent, defendant, Emanuel Friedman, in trust, and the respondents, defendants, therefore are entitled to an undivided one-third interest in the land in controversy.

The second exception and assignment of error made by respondents, defendants, we think cannot be sustained—which is as follows: "For that the Court found as a matter of law that by virtue of the provisions of the next to the last Codicil to the Last Will and Testament of Margaret B. Walsh all of the right, title and interest in the lands in controversy descended to her grandchildren, the petitioners herein, in the failure of the sons of Margaret B. Walsh to exercise the powers given them, except as to William S. Walsh, who devised his one-third interest to his sister, Catherine Walsh, as before set forth.

The language of the codicil of 17 May, 1886, of Margaret B. Walsh, is as follows: "Upon the death of my daughter Catherine without having been married and without having entered a convent, I give and bequeath the same to and among such of my four sons, William S.; John F.; Charles H. and Henry C., as may be then living and the children then living of such as may have died *per stirpes,* in equal shares, absolutely."

The language of the codicil of the will of Margaret B. Walsh, dated 18 February, 1899, is as follows: "I direct that my estate shall descend to the children of my said four sons *per stirpes*. In the event of my son John Francis remaining unmarried I empower my three sons William S. Walsh, Charles H. Walsh and Henry C. Walsh each to dispose of one-third of my said residuary estate by will subject as aforesaid and in default of such disposition, I direct that the same shall descend to the children of my said three sons *per stirpes*."

John Francis Walsh never married and therefore never had power to dispose of any of the property by will or otherwise. Chas. H. Walsh and Henry C. Walsh died without disposing of their one-third interest each. Charles H. Walsh died intestate on 9 May, 1912, survived by his children, the petitioners, plaintiffs, herein. Henry C. Walsh died intestate on 29 April, 1929, leaving no children. The petitioners, plaintiffs, are the only surviving children of Chas. H. Walsh and are Margaret B. Walsh's grandchildren.

The devise to Catherine Walsh for life, with power to dispose of during her life, contained in the next to the last codicil of the will of Margaret B. Walsh, did not give Catherine Walsh a fee simple interest in the land in controversy. The language is so clear that it did not, that it is hardly necessary to discuss this. We think that Catherine Walsh took no interest in the land in controversy on the death of her brothers, Charles H. and Henry C. Walsh.

In *Irvin v. Brown et al.,* 160 S. C., 374 (378), is the following: "The appellant urges that *'stirpes'* is not a word of inheritance or purchase, but relates to the mode of distribution. After very careful consideration, we think the appellant's contention should be sustained. The term *'per stirpes'* is defined in 30 Cyc., 1533, to be 'a term of the civil law, extensively used in the modern English and American law, to denote that mode of the distribution and descent of intestate's estates, where the parties entitled take the shares which their stocks (such as a father), if living, would have taken.' It is true that *'stirpes'* denotes roots or common stocks, and that the term *'per stirpes'* means literally 'by stocks or roots,' yet, as has been indicated, that term as employed in our law relates to the mode of distribution—not who shall take, but the manner in which those shall take who come within the class entitled to take. . . . (p. 379) But by the use of that term, the testator did not mean to identify or name the devisees—he had already done that—but to prescribe the manner in which they should take."

The term *"per stirpes"* relates to the mode of distribution. Black's Law Dictionary, 3rd Ed., p. 1349, defines *"per stirpes"* as follows: "By roots or stocks; by representation. This term, derived from the civil

law, is much used in the law of descents and distribution, and denotes that method of dividing an intestate estate where a class or group of distributees take the share which their deceased would have been entitled to, taking thus by their right of representing such ancestor, and not as so many individuals," citing authorities. In *Burton v. Cahill,* 192 N. C., 505 (509), *Brogden, J.,* quotes with approval from *Walker, J.,* in *Mitchell v. Parks,* 180 N. C., at 634, as follows: "It is generally held that a devise or bequest to the children of two or more persons whether expressed as to the children of A and B, or to the children of A, and the children of B, or two relatives of different persons, usually means that such children or relatives shall take *per capita* and not *per stirpes,* unless it is apparent from the will that the testator intended them to take *per stirpes."* *Lamm v. Mayo,* 217 N. C., 261.

It is readily apparent, therefore, that Margaret B. Walsh, by employing the term *"per stirpes"* in both her codicils, intended to and did defeat what otherwise would have been a *"per capita"* distribution, nothing else appearing. In fact the codicil of 17 May, 1886, says "in equal shares absolutely." The grandmother used the words *"per stirpes"* as a mode of distribution. The children should inherit not *per capita,* but through their ancestor and what was his share. We hardly think the question arises, as only one left children, the plaintiffs, petitioners. The petitioners, plaintiffs, are not limited to the one-third interest of their father, but may take, as we think their grandmother intended, the entire gift to the class. For the direction "that the same shall descend to the children of my said three sons *per stirpes"* was, as we see it, a gift to a class. *Mason v. White,* 53 N. C., 421; *Leggett v. Simpson,* 176 N. C., 3; *Burton v. Cahill, supra; Lamm v. Mayo, supra;* Page on Wills (2d Ed.), Vol. 2, sec. 918, *et seq.*

As the petitioners, the plaintiffs, under our construction of the will, is entitled to two-thirds of the property in controversy and the respondents, or defendants, one-third, the costs shall be paid in that proportion. As to the rents and profits of the land since the death of Catherine Walsh, the petitioners, the plaintiffs, are entitled to two-thirds and the respondents, defendants, one-third.

The judgment of the court below, in accordance with this opinion, is
Modified and affirmed.