The **PLANTERS NATIONAL BANK AND TRUST COMPANY, Executor of the Estate of Emily B. Perry, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

No. 74–0011–CIV–8.

United States District Court, E. D. North Carolina, Wilson Division.

Jan. 4, 1977.

Robert M. Wiley, Battle, Winslow, Scott & Wiley, Rocky Mount, N.C., for plaintiff.

Jack D. Warren, Tax Div., Dept. of Justice, Washington, D.C., for defendant.

## MEMORANDUM OF DECISION

DUPREE, District Judge.

Emily Braswell Perry died testate on April 4, 1969, leaving a gross estate of $2,227,211.65. In this tax refund suit her executor, Planters National Bank, alleges that the Internal Revenue Service improperly disqualified a substantial portion of the estate for marital deduction purposes resulting in an overpayment of estate taxes of approximately $151,000, recovery of which is sought from the government.[1] The case is before the court on cross-motions for summary judgment.

The undisputed facts are:

1. Mrs. Perry executed her will on October 31, 1949; after making specific devises of personalty and realty to her husband and two sons, the dispositive provisions concluded with Paragraph 5, which read: "All the

---

1. Although several other claims are set out by plaintiff in its complaint, the Internal Revenue Service has now agreed with plaintiff's position on all matters other than the eligibility of a portion of decedent's estate for the marital deduction.

rest and residue of my estate, if any, I give, devise and bequeath to my husband, William D. Perry, and my adopted sons, Mark Braswell Perry and Clifford Braswell Perry, in the proportion of one-third to each."

2. On November 12, 1959, Emily B. Perry entered into a trust agreement with Planters National Bank, with the Bank as trustee and herself as beneficiary. The trust was still in effect on the date of her death.

3. Paragraphs 7 through 15 of the trust agreement are extensive provisions detailing how the corpus and income of the trust should be distributed if the settlor should die during its existence. Although the decedent's husband and sons are the beneficiaries in the same proportions as in the will, these provisions of the agreement make alternative dispositions in the event that one or more of the beneficiaries should die prior to the termination of the trust.

4. Under these provisions of the trust, William D. Perry, the husband of decedent, received no interest in the trust estate unless he was living at the expiration of the trust. Therefore, it was necessary for him to survive either until his youngest son reached thirty, or if neither son reached thirty, to survive the longer liver, in order to have an interest in the trust estate.

5. Paragraph 18 of the trust reads as follows:

"The Grantor reserves the right to change the beneficiaries of this trust and the disposition of her property at her death by will or paper writing signed by her and asked to be made a part of this trust agreement at any time she may desire to do so."

Based on these facts, the government contends that one-third of the trust estate passed to William D. Perry under the trust instrument; that since at the time of Mrs. Perry's death his interest was contingent on surviving until the expiration of the trust, it was terminable as defined by Section 2056(a) of the Internal Revenue Code, 26

U.S.C. § 2056(a), and as such, it does not qualify for the marital deduction.

■ Although the plaintiff acknowledges the correctness of the government's analysis if Mr. Perry received his portion of the trust estate under the trust instrument, it contends instead that the property passed outright under the residuary clause of the will and is therefore includable in the marital deduction. Plaintiff supports its argument with two theories: first, that paragraph 18 of the trust instrument is a general power of appointment exercised by the residuary clause of the will by virtue of the statutory presumption created by N.C.G.S. 31–43 (1966); and second, that the trust was invalid, and therefore the property purportedly held by the trustee was actually owned by the settlor.

Turning to plaintiff's first argument, N.C.G.S. 31–43 (1966) provides that:

"A general devise of the real estate of the testator . . . shall be construed to include any real estate . . . which he may have power to appoint in any manner he may think proper; and shall operate as an execution of such power, unless a contrary intention shall appear *by the will;* and in like manner a bequest of the personal estate of the testator . . . shall be construed to include any personal estate . . . which he may have power to appoint in any manner he may think proper, and shall operate as an execution of such power, unless a contrary intention shall appear *by the will.*" (Emphasis added.)

It is clear under North Carolina law that the general residuary clause (Paragraph 5) of Mrs. Perry's will constitutes both "a general devise of the real estate" and a "bequest of the personal estate" as those terms are used in N.C.G.S. 31–43 (1966). *Johnston v. Knight,* 117 N.C. 122, 23 S.E. 92 (1895); *Walsh v. Friedman,* 219 N.C. 151, 13 S.E.2d 250 (1941).

It is also clear that Paragraph 18 of the trust agreement is a general power of appointment.[2] Although the government con-

---

2. The North Carolina Supreme Court has held that "a power to appoint in any manner he may think proper" as required by N.C.G.S. 31–43 (1966) is synonymous with a general power of

ceded this point in its brief, counsel orally argued otherwise. His position at oral argument was that since Paragraph 18 only gave Mrs. Perry the power to "change the beneficiaries or alter the disposition of her property", the power could not be exercised in favor of her husband and sons who were already the beneficiaries under the trust instrument. Because the group of persons from whom Mrs. Perry could appoint beneficiaries was limited in this fashion, counsel reasoned that Paragraph 18 did not give her a general power of appointment as required by N.C.G.S. 31–43.

Although the argument is ingenious, the court finds it strained. The power given to Mrs. Perry to "alter the disposition of her property" is sufficiently broad to have allowed her to distribute the trust estate to whomever she thought proper, and in whatever proportions she desired, regardless of whether the persons she appointed were already beneficiaries under the trust. Since a " 'power is general where no restriction is imposed upon the donee as to the person or persons to whom he may appoint or the amount which each person shall receive.' *O'Hara v. O'Hara*, 185 Md. 321, 325, 44 A.2d 813, 815, 163 A.L.R. 1444, 1448," *Wachovia Bank & Trust Company v. Hunt*, 267 N.C. 173, 176, 148 S.E.2d 41, 43 (1966), the court holds that Paragraph 18 of the trust constitutes a "power to appoint in any manner [s]he may think proper," thereby complying with Section 31–43 in this respect.

Having concluded thus, the only question remaining is whether the residuary clause in the will exercised the general power of appointment created by Paragraph 18 of the trust agreement. North Carolina General Statutes 31–43 creates a statutory presumption in favor of exercise of a power of appointment by a residuary clause, and on its face bars any other result unless an intention contrary to exercise can be inferred from the will. Whether the court may go beyond the will and analyze the underlying sequence of events surrounding the execution of the will and the trust instrument in order to ascertain the testator's intent is the crucial issue in this case. If such an analysis is permissible, it would strongly support the government's position. If Mrs. Perry intended for the disposition of the trust estate to be controlled by the residuary clause of her will, then she must have known at the time of executing the trust agreement in 1959 that the extensive provisions in Paragraphs 7–15 outlining the disposition of the trust estate at her death were null and void from the time of signing the instrument. Presuming that Mrs. Perry intended her actions to have some effect, it is more likely that her dispositive intent was instead for the trust estate to pass under the trust instrument, and for the remainder of her property to pass under the will.

On the other hand, if, as plaintiff urges, Section 31–43 must be read to limit the search for an intent contrary to exercise of the appointment to the will itself, the statutory presumption in favor of exercise must prevail, for the dispositive pattern in the will simply divides the estate evenly among the three persons to whom the decedent was most closely related. No awkward or irregular pattern of distribution results if the trust estate passes according to the residuary clause.

The North Carolina cases construing Section 31–43 have not dealt with the precise question of whether it bars consideration of evidence extrinsic to the will to determine the testator's intent. However, cases from other jurisdictions are particularly helpful in this instance, for statutes identical or similar to Section 31–43 have been passed in many states, all deriving from Section 27 of the English Wills Act of 1837. *Cf., Wachovia Bank & Trust Company v. Hunt, supra.*

In *Keating v. Mayer*, 236 F.2d 478 (3rd Cir. 1956), the IRS argued that a power of appointment by will given to a granddaughter in her grandfather's will was exercised by the residuary clause of the granddaugh-

appointment as commonly defined. *Wachovia Bank & Trust Company v. Hunt*, 267 N.C. 173,

148 S.E.2d 41 (1966). Therefore the terms are used interchangeably in this memorandum.

ter's will. The plaintiff argued that since the same people took under the grandfather's will if the power were not exercised as took under the residual clause of the granddaughter's will, this was evidence that the granddaughter did not intend to exercise the power and thereby include the property in her estate. The Third Circuit held that the plaintiff's reliance on the grandfather's will to rebut the statutory presumption of exercise was misplaced:

"We cannot subscribe to the taxpayer's contention that the decedent's will 'when read in the light of her grandfather's will creating the power, evidences an intention not to exercise the power.' The 'contrary intent', under the Pennsylvania Wills Act, must appear in the decedent's will and nowhere else. To hold otherwise, would be in flagrant disregard of the express and unambiguous terms of the statute." At 481.

The majority of other courts construing statutes requiring a contrary intent to be determined from the will have reached the same result. *U. S. Trust Company v. Winchester*, 277 Ky. 434, 126 S.W.2d 814 (1939); *In re Deane's Will*, 4 N.Y.2d 326, 175 N.Y. S.2d 21, 151 N.E.2d 184 (1958); *In re Estate of Jaekel*, 424 Pa. 433, 227 A.2d 851 (1964); *Art Students League of New York v. Hinkley*, 31 F.2d 469 (D.Md.1929), aff'd, 37 F.2d 225 (4th Cir. 1930), cert. denied, 281 U.S. 733, 50 S.Ct. 247, 74 L.Ed. 1149 (1930).

Defendant places sole reliance on the Maryland case of *Gassinger v. Thillman*, 160 Md. 194, 153 A. 19 (1931). In *Gassinger*, the decedent had deeded the bulk of his property to his wife for life with remainder to his children, but had reserved to himself a power of appointment over the property. In his will, he left his entire estate to his wife. Since decedent's wife was not the mother of the children who were remaindermen in the deeds, and since the wife predeceased the decedent, a decision that the residuary clause of the will exercised the power of appointment in the deeds would have deprived decedent's children of their interest in the property and placed title in the deceased wife's next-of-kin under the Maryland antilapse statute. In a short opinion, the Maryland Court of Appeals held that the power of appointment in the deeds was not exercised by the residuary clause of the will. This court is inclined to agree with the plaintiff's assertion that *Gassinger* is a classic example of hard facts making bad law, especially since later Maryland decisions have reaffirmed the principle that an intent contrary to exercise of a power must be found within the four corners of the will. *Lederer v. Safe Deposit & Trust Company of Baltimore*, 182 Md. 422, 35 A.2d 166 (1943).

██ The overwhelming weight of authority from other jurisdictions supports the conclusion that N.C.G.S. 31–43 restricts the search for an intent contrary to exercise of the power of appointment found in Paragraph 18 of the trust instrument to Emily Perry's will. As earlier indicated, no provision of that document raises any inference of an intent not to exercise her power of appointment over the trust estate. Therefore, the court holds that the portion of the trust estate received by William D. Perry passed to him by his wife's will rather than by the trust instrument, and therefore was improperly disallowed as qualifying for the marital deduction by the Internal Revenue Service. It appearing so, the estate tax assessed on this portion of the estate must be refunded.

Having decided that the trust estate passed by the will rather than by the terms of the trust instrument, it is unnecessary to reach the merits of plaintiff's claim that the trust itself was invalid due to failure to attach to the instrument an appendix listing the assets held by the trust. However, the court notes that the plaintiff, as trustee, administered this trust for nine and one-half years prior to the death of Mrs. Perry without any uncertainty as to the identity of its assets. It paid taxes on the trust income, income to the beneficiary, and a fee to itself for acting as a fiduciary. Thus the court is skeptical that ambiguity as to the assets renders this particular trust fatally defective.

This litigation was necessary only because plaintiff neglected to update an estate plan originally formulated, according to counsel, in 1929, to conform to the provisions of the marital deduction statute enacted a quarter of a century thereafter. In ruling in plaintiff's favor, the court in no way condones plaintiff's apparent failure to stay abreast of basic changes in a field in which it holds itself out to the public as an expert.

Counsel will submit within thirty days from this date a judgment agreed to as to form and amount of the tax refund to which plaintiff is entitled hereunder.